UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL NO. 05-286 (EGS) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| **STANLEY KREJCI,** | : | |
| | : | |
| **Defendant** | : | |

### GOVERNMENT'S OPPOSITION REGARDING CALCULATION OF LOSS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Opposition regarding calculation of loss.

<u>Defendant's motion is premature</u>.

The defendant's motion is premature because the positions of the parties regarding the amount of loss initially should be presented to the Pre Sentence Report (PSR) writer for possible resolution. After evaluating the parties' positions, the PSR writer will make a recommendation to the Court. If either party disagrees with the recommendation about the amount of loss contained in the final PSR, that would be the appropriate time to file an objection with the Court. Nonetheless, because the government anticipates that the amount of loss will remain a matter of contention between the parties even after the PSR has been prepared, it submits this opposition to the defendant's arguments.

<u>The actual loss is $100,539.87</u>.

In the Statement of Offense which he signed when pleading guilty, the defendant admitted that by June of 2000, "I converted $100,539.87 belonging to Ms. Englander and Ms. Ruggerio for the use of the Company." (Statement of Offense, p. 5.) This amount was repaid to

the victims only when the defendant pleaded guilty in 2005. Accordingly, the actual loss is $100,539.87; and this amount should be used to compute the guideline range.

<u>Defendant's argument about intended loss is erroneous</u>.

Despite the direction in Commentary Note 3(A) to § 2B1.1 that "[l]oss is the greater of the actual loss or the intended loss," the defendant argues that the actual loss should be reduced based upon his interpretation of intended loss. Under the defendant's theory, he should receive credit for the money he sent to Interface in November 2000. This position misconstrues both the definition of intended loss as well as the <u>Staples</u> decision upon which the defendant relies.

The defendant quotes from the first part of Commentary Note 3(E)(i)[1] to § 2B1.1 about "Credits Against Loss" without quoting from the second portion of the definition. Although it is true that the amount of loss should be reduced by amounts returned "to the victim before the offense was detected," the Commentary Note continues:

> The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the time the defendant knew or should have known that the offense was detected or about to be detected by a victim or government agency.

The defendant's claim in footnote 2 of his motion that law enforcement did not notify him about the criminal investigation until 2001 is irrelevant. As the Commentary quoted above makes clear, the crime can be detected either by the victim or by law enforcement. A defendant should not receive credit for payments once the crime has been discovered by either one. In this case, there is no dispute that the victims knew money was missing from their retirement accounts by

---

[1] The defendant incorrectly cites to Commentary Note 2(E)(i), which was the citation from a prior version of the Guidelines Manual. The correct citation for the 2005 Manual, which will be in effect at the time of sentencing, is Commentary Note 3(E)(i) of § 2B1.1.

November 2000. Accordingly, the money which the defendant attempted to return in November 2000 does not qualify for reduction of the loss amount.[2]

The decision in <u>United States v. Staples</u>, 410 F3d 484 (8th Cir. 2005), provides no support for the defendant's argument. <u>Staples</u> confirms that "[s]ince the actual loss [] was greater than the intended loss, the court should have used the actual loss amount to calculate Mr. Staples's sentencing range." <u>Id</u>. at 491. This is consistent with the definition in Commentary Note 3(A) to § 2B1.1 that "loss is the greater of the actual loss or the intended loss." Because the victims in this case actually lost $100,539.87, the question of a lesser amount of intented loss is irrelevant. Moreover, the discussion of intended loss in <u>Staples</u> concerned whether or not to credit the defendant for the value of collateral pledged in support of a fraudulent loan. <u>Id</u>. at 490-491. Those facts have no relationship to the instant case. Defendant Krejci pledged no collateral of any kind. He simply took money from the victims' retirement accounts without permission while serving as Trustee of the funds. Accordingly, there should be no reduction of the amount of actual loss on this theory.

<u>The $20,000 taken by the defendant on May 31, 2000 counts as loss</u>.

The defendant's other theory is that the amount of loss should be reduced by the $20,000 he took from the pension funds after the defendant had been fired from his job with Interface. To the contrary, the defendant also is responsible for this $20,000 of loss he caused.

---

[2] Of course, the defendant's analysis also is incorrect about the amount of the supposed credit. As he admits in his motion, the defendant had at most only a 50% interest in the amount of $20,500 which he sent to Interface in November 2000. Thus, any potential credit should be limited to $10,250. In any event, because none of the money actually went into the pension funds to repay Ms. Englander and Ms. Ruggerio, no money actually was "returned to the victim" as is required to qualify for a credit against loss.

Whether or not employed as the President and Chief Operating Officer of Interface, the defendant was the Trustee of the pension funds on May 31, 2000. The defendant cannot deny that he signed the check which took $20,000 from the pension funds. Neither can the defendant deny that he signed this check after he had taken nearly $80,000 belonging to the victims through the process of writing numerous other checks against the pension funds. In this regard, the defendant's conduct on May 31, 2000, was exactly the same for the last check as it had been for the other checks which caused loss to the victims. As the Trustee, the defendant was required to determine the amount of money in the account before signing any checks, and he had an obligation to refuse to sign a check which was not authorized. The defendant was not compelled to take money from the pension plan; he did so voluntarily. The loss is attributable to him.

Defendant's contention that he took the money after consultation with others does not change the result. When he took money from the pension funds, the defendant was not entitled to rely upon the statement of Ms. Duggan that money was needed for Interface. As the defendant was aware, Ms. Duggan had no relationship to the pension funds. She worked for the Interface's accounting firm. As the defendant also was aware, another company handled matters for the pension funds. The fact that Ms. Duggan merely said the Interface needed money did not authorize the defendant to take money from the pension funds for which he was Trustee. It was the defendant who took the money from the pension funds despite the fiduciary duty he owed to the victims to protect their pensions. The defendant had a continuing obligation to check on the status of the pension funds. He ignored that responsibility, and took the funds without authorization.

The defendant's claim that he wrote the last $20,000 check without any interest in Interface is factually incorrect. The defendant had an interest in the company even after he was fired because he was a shareholder of Interface stock. If Interface failed, he would not see a return on that investment. Further, as a former officer of Interface, the defendant might face personal liability if the company failed. Either reason provided the defendant with an interest in Interface. Finally, the loss amount is not contingent on the defendant's motive for taking the money. The question is whether the defendant caused the loss, not why he caused it.

## Conclusion

There is no reason to reduce the amount of actual loss which the defendant caused in the amount of $100,539.87. This loss amount falls in the loss range of $70,000 to $120,000 contained in § 2B1.1(b)(1), and it results in an 8 level increase in the Guidelines calculation.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
D.C. Bar No. 451058

_____
Thomas E. Zeno
D.C. Bar No. 348623
Assistant United States Attorney
Fraud and Public Corruption Section
555 Fourth Street, N.W.
Washington, D.C. 20530

**CERTIFICATE OF SERVICE**

I HEREBY certify that a copy of the foregoing Opposition was served via electronic filing on this 19th day of December 2005 to:

>Sanford M.Saunders, Jr., Esquire
>Greenberg Traurig LLP
>800 Connecticut Avenue, N.W.
>Suite 500
>Washington, D.C. 20006

_____
THOMAS E. ZENO
Assistant United States Attorney