The Honorable Emmet G. Sullivan
U.S. District Court for the District of Columbia
3rd and Constitution Aves. NW
Washington, DC 20001

Dear Judge Sullivan:

I write on behalf of Stan Krejci, Case No. 05-286.

My husband and I have known Stan for over 30 years. I think I know him well from the many times I have talked to him at community functions as well in his home where we have played cards and have had wonderful meals.

He is one of the best fathers I know. I have known him from the time his children were babies to now when they are adults. He has unfailingly talked about his children with wonderful pride. And the pride he has in them is returned by them. I have talked to them on occasion and I know what a strong bond there is between Stan and his children.

As a special educator who works with families in their homes almost every day, I believe that a family who has a father in the home who cares for his family in the way Stan cares for his family is truly blessed.

I ask that you allow Stan to continue to be present in his home so that he can continue to be the wonderful mentor he has been for many years.

                                  Sincerely,

                                  Carol O'Connor

# MAERSK INC.



**MAERSK**

January 23, 2006

Honorable Emmet G. Sullivan
United States District Court for the District of Columbia
3rd and Constitution Avenue, N.W.
Washington, D.C. 20001

Re:   United States v. Stanley Krejci
      Criminal No.: 05-286

Dear Judge Sullivan:

Having known Stan Krejci both as a neighbor and close friend for over thirty years, I am writing to the Court with the hope that my comments concerning Stan and his life as I have known it would assist you in exercising your sentencing responsibilities.

Prior to assuming the position of General Counsel with Maersk Inc., I practiced law for thirty-five years in Washington with the law firm of Morgan, Lewis and Bockius. My specialty was labor and employment law. Thus, my professional background doesn't provide me with any particular insight or frame of reference in the federal criminal sentencing area. However, I recognize for any judge, the sentencing of a fellow citizen in a fair and appropriate way is one of the most difficult responsibilities of the judicial function.

I learned of Stan's guilty plea through the press – The Washington Business Journal and a local newspaper in Alexandria. Needless to say I was shocked at the thought that Stan had been accused, no less plead guilty, to any criminal offense. For the man I knew for many, many years, that conduct seemed inconceivable to me.

Once I learned of the plea, I contacted Stan and since that time I have spent many hours with him discussing the matter, and, while attempting to assist him, also attempting to understand how he could have committed the acts which required him to admit guilt and enter a plea. I've also reviewed the documents filed with the Court including the Plea Agreement, the Criminal Information and the Statement of Offense. I did this in an attempt to reconcile the conduct with the man that I have known for so many years. I am far from certain that I have a complete picture, but at least I have some understanding, I believe, to what happened, and a suggestion as to how society would be best served by Stan making amends for this conduct.

The Stan Krejci I know is characterized by generosity. He is a man of deep faith, single devotion to his wife and family and his friends. Over the years in Alexandria he has consistently and without hesitation responded to requests for assistance in numerous civic and charitable activities. Similarly in the District of Columbia he has reached out to various charitable organizations to improve both the education and welfare of the Districts' citizens. I know from speaking with Stan that the Court will receive direct commentary from the charities involved; therefore I don't intend to burden the Court with a list or description. Suffice it to say, when I reviewed the list of charitable activities that Stan has performed over the same period of time that we have both lived in the Washington area, and I was ashamed as to the lack of time I have devoted to similar activities. In short, Stan has been a model for many of us in "walking the walk" of generous charitable outreach, not simply "talking the talk." Stan is not a man of great wealth. He needs to work to support his family. Thus his charitable and civic activity was not simply "checkbook participation," rather he gave of his time and most importantly himself.

As a close friend I've had the opportunity to observe, participate with and enjoy the company of Stan and his family. He and his lovely wife Gail have raised two great children. In the course of raising those children, both he and Gail provided additional guidance and support to numerous children and friends of the family. When a friend's family had a health crisis, a marital separation or some other personal tragedy, the first person on the scene would be Stan Krejci asking what he could do to help.

In a sense, reviewing in my mind the Stan Krejci I know with the facts I read in the government filing in this case, the only way I could rationalize the conduct with the man I knew was to conclude that at the point in time the pension fund assets were depleted, Stan and his business partner were dealing with a failing enterprise that they desperately wanted to maintain as a source of employment for themselves and the other Interface employees, and Stan simply lost his focus on his duties as a fiduciary and focused exclusively on attempting to save the business. This is not an attempt to excuse the conduct. However, it is to place into a context which I can understand based upon the experience of thirty-five years of legal practice, and observing our fellow citizens placed in difficult financial circumstances and often reacting in a manner totally inconsistent with their normal values or standards or how they would have acted if they could have considered the conduct in isolation.

Let me turn to what I think is perhaps most relevant to the Court's sentencing responsibility. Since learning of the guilty plea, I have spent time with Stan and therefore feel comfortable in describing the impact this event has had on Stan and his family. I have no doubt that you have had few defendants come before you who have more of a sense of shame, remorse and contrition than Stan Krejci for the events that will place him before the Court on February 23. As noted at the outset, along with most of Stan's close friends, I learned of the guilty plea through the press some two months after it was entered. Stan was ashamed of his conduct, and ashamed to consult with friends as he went through the investigation phase and the plea phase. Indeed I suspect he thought the entire matter might never be revealed. When it was revealed through fairly sensational press reports, Stan paid an enormous personal price. Most organizations that for years had depended upon him for generous support in their activities separated themselves from him. While the action taken by the organizations is understandable, the impact on Stan, who devoted most of his free time to supporting these organizations, was heart rendering. A most

important part of his life was simply taken away from him, never to be returned. For many individuals who perform charitable and civic activities as a necessary component of a professional life, removal from the organizations may not be that difficult. For Stan Krejci, who spent most of his life dedicated to these organizations, it was devastating.

Of even greater importance and significance in terms of the price Stan has paid for his mistake in judgment and conduct was in dealing with his own family and close friends. Reconciling the image that a son, daughter, wife or close friend has with the conduct admitted to by this complaint is not easy to explain. The explanation and admission of guilt takes a tremendous personal toll.

In summary, I have no doubt that Stan Krejci has suffered an enormous personal penalty for his mistake in judgment and conduct. As I read the documents, it appears that the victims of this conduct have had their pension funds restored by Stan with his personal funds. Obviously this constitutes an additional personal penalty as the funds withdrawn were used to support the Interface business, not Stan. The question then before the Court is what additional punishment should Stan pay in order for society to be made whole. I respectfully suggest that there is absolutely no reason to incarcerate Stan Krejci on the basis of this offense. In a very real sense, the entry of the guilty plea and the publicity within communities that Stan Krejci treasures, both Washington, as well as the City of Alexandria, has already imposed a form of isolation, estrangement and ostracism that is in and of itself a severe penalty. Therefore, instead of incarceration, I respectfully suggest that the Court consider sentencing Stan to perform community service to the neediest organizations in the District of Columbia, and perhaps Alexandria. The Court could select the organizations most in need of a person with Stan's background and skills in the area of charitable work which would assist in improving the lives of our fellow citizens. This is a man who has an established track record of successfully assisting community organizations, and his skills should be channeled in ways that the Court deems most appropriate to recognize the payment of a debt to society for his conduct.

As your Honor knows far better than this writer, every sentence affects a human life and, in most cases, the lives of many people, including family and friends. In this instance a sentence is available which can have a positive affect on the defendant and benefit members of society most in need. I respectfully suggest such a sentence would be fair and just.

Sincerely,

*Charles P. O'Connor*

Charles P. O'Connor
Vice President and General Counsel

**TERRENCE M. O'CONNOR**
ATTORNEY-AT-LAW

6216 ARKENDALE ROAD
ALEXANDRIA, VIRGINIA 22307-1001

TELE: (703) 587-6970
FAX:   (703) 997-4535
E-MAIL: terryoconnor
@att.net

ADMITTED TO PRACTICE IN:

THE DISTRICT OF COLUMBIA‡
VIRGINIA‡
NEW YORK
   ‡ ACTIVE

The Honorable Emmet G. Sullivan
U.S. District Court for the District of Columbia
3rd and Constitution Aves. NW
Washington, DC 20001

Dear Judge Sullivan:

I write on behalf of Stan Krejci, Case No. 05-286. My wife and I have known Stan for the past 30 years. We met at a Bible study group in our neighborhood.

But the perspective I bring to this letter is not that of a friend. It's from two other perspectives.

First, my perspective is that of a CJA lawyer who spent 15 years in DC Superior Court, (1984-1999). It is also the perspective of a son whose father, a lawyer, was allowed, publicly, to resign from the Bar because he made a mistake regarding his client's money.

My personal experience makes me question people who dismiss, as not appropriate punishment for white-collar crime, the humiliation of being known in your community and among your long-time friends for the rest of your life as someone who pled guilty to a felony.

I know for a fact that this is the worst punishment a respected, successful business man – a good and decent man – can experience. Someone like Stan has already been severely punished even before his sentencing. I would ask that you acknowledge this and consider some way that his continued presence in the community can serve us all. Taking Stan from the community he has long served punishes all of us.

Sincerely,

*Terry O'Connor*

TERRENCE M. O'CONNOR