UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Criminal No.: 05-286 |
| | : | |
| **STANLEY KREJCI,** | : | |
| | : | |
| Defendant. | : | |

### DEFENDANT STANLEY L. KREJCI'S REPLY TO GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

Defendant Stanley L. Krejci ("Mr. Krejci"), by and through counsel, respectfully submits this reply memorandum to address certain matters raised in the Government's Memorandum in Aid of Sentencing, in connection with his sentencing by the Court on February 23, 2006.

A critical point requiring address is the government's mischaracterization of Mr. Krejci's position as "a variation of the defense of blaming the victims." Gov.'s Mem. at 1. This is simply incorrect: in no way does Mr. Krejci suggest that either Ms. Ruggerio or Ms. Hope are to blame for either his conduct of the losses they incurred. Mr. Krejci accepts responsibility as the sole person responsible for the eventual improper depletion of the pension fund. Moreover, the fact that Mr. Krejci, in an effort to prevent the collapse of The Interface Group (the "Company") began an initially lawful course of drawing funds from the subject employee benefit plans (hereinafter, the "Plan" or "Plans") after discussion and agreement with the Company's founder and main principal, Mr. Marumoto, and pursuant to the advice of the independent plan auditor does not support such a conclusion. Mr. Krejci's motivation in engaging in the course of conduct which eventually gave rise to the offense is critical, however, in providing a necessary understanding of the context in which his actions occurred, and of the intent behind those

actions. The government overreaches in attempting to cast this as "blaming the victims," and imputing to Mr. Krejci the temerity to contend that the "victims should be grateful to him because he preserved their jobs." Id.

Of equal concern is the government's attempt to portray Mr. Krejci's offense as somehow more willful and nefarious by adverting to events that are wholly unrelated to the matter at hand. The government points to two letters from Ms. Johnson requesting information regarding her Plan investments in the years 1997 and 1998. Gov.'s Mem. at 2 & Exs. 1 & 2. These matters are inapposite to a sentencing determination because they predate the offense conduct, the withdrawal of Plan funds belonging to Ms. Johnson or Ms. Ruggerio, by years and they do not relate to or reflect a means to commit the illegal conduct. As the government itself acknowledges, Mr. Krejci did not draw on either victims' Plan funds until September 30, 1999. Gov.'s Mem. at 3. For a period of more than two years prior to that, since July of 1996, id. at 4, Mr. Krejci had been lawfully drawing loans to the Company from Plan funds belonging to Mr. Marumoto, with the consent and, at times, the direction of the latter. The government's statement that "[i]t was not until after the defendant left the company that the victims learned that the defendant had taken their pension funds," Gov.'s Mem. at 2, is a non-sequitur to Mr. Krejci's asserted failure to reply to Ms. Johnson's inquiries of 1997 and 1998, even assuming the correctness of that assertion, and is not at all related to the September 1999 and later use of the victims' funds as loans to the Company. Similarly, the government's invocation of the referenced lapse of an ERISA bond, id., is irrelevant to the actual offense conduct, invites unfair prejudice, and should be disregarded by the Court.

Finally, it is necessary to reply to the government's contention that a downward departure on the basis of Mr. Krejci's charitable works/community service is not applicable, a position which is internally inconsistent based on the government's own assertions of fact.

The government argues that Mr. Krejci is not entitled to a downward departure for his good works because they do not amount to the "kind of extraordinary conduct which would justify a lower sentence." Id. Significantly, the government immediately adds: "For instance, it truly would have been extraordinary if a large portion of the defendant's own pension money had been invested into saving Interface." Id.

It follows from this concession by the government that the circumstances are in fact extraordinary, and a downward departure is warranted. While Mr. Krejci, because he was not a Plan participant, did not have such pension funds to loan to the Company, he did something even more extraordinary: he stopped drawing a salary from the Company in January 2000.[1] Mr. Krejci, as opposed to hypothetically permitting loans to be drawn by the Company from pension funds to which, at a future date, he could lay claim, and could at the time only draw for himself subject to significant penalty, he in fact gave up actual, present income to which he had full, immediate and unrestricted claim, without any penalty, in order to maintain Interface as a going concern. Mr. Krejci's foregone income for the portion of the year 2000 in which he remained employed by the Company was substantial, approaching a third of his annual salary. These funds due and owing to Mr. Krejci were, instead, effectively invested into the Company by Mr. Krejci. In short, Mr. Krejci engaged in the functional equivalent of the precise "extraordinary conduct" which the government concedes merits a reduction in sentence.

---

[1] Mr. Krejci also prevailed upon Mr. Marumoto to forego his salary for the same period.

3

## CONCLUSION

For the reasons stated herein and in the previously submitted Sentencing Memorandum and Motion, we respectfully request that the Court sentence Mr. Stanley Krejci to probation.

Respectfully Submitted,

STANLEY KREJCI,

By his attorneys,

_____
Sanford M. Saunders, Jr.
Greenberg Traurig LLP
800 Connecticut Avenue, NW
Washington, DC 20006
(202) 331-3130
saunderss@gtlaw.com

_____
A. John Pappalardo
Greenberg Traurig LLP
One International Place
Boston, MA 02110
(617) 310-6072
pappalardoj@gtlaw.com

#183801

4